UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIA L. McCLAIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | |
| CITIMORTGAGE, INC., | ) | File No. 1:15-cv-6944 |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, MARIA L. McCLAIN, by the undersigned attorneys, complains of Defendant CITIMORTGAGE, INC. as follows:

### NATURE OF THE ACTION

1. Plaintiff MARIA L. McCLAIN brings this action for damages for breach of contract, violations of the Real Estate Settlement Procedures Act ("RESPA"), and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").

2. All of the claims stated herein stem from CitiMortgage, Inc's wrongful servicing and debt collection activities related to McClain's home mortgage loan.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1337 and 12 U.S.C. § 2614 (RESPA), as the action arises under the laws of the United States. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4. Diversity jurisdiction is conferred upon this Court by 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000.00 and is between citizens of different states.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the subject property is in this District and the events occurred in this District.

## PARTIES

6. Plaintiff Maria McClain ("McClain") is a natural person that owns the property at 1006 Northside Drive, Shorewood, IL 60404 ("subject property"). McClain purchased the subject property as her primary residence and still occupies it as her primary residence.

7. Defendant CitiMortgage, Inc. ("Citi") is a New York corporation with its principal place of business at 1000 Technology Dr., O'Fallon, MO 63368. CitiMortgage does business in Illinois.

## FACTS SUPPORTING CAUSE OF ACTION

8. On September 26, 2006, McClain and her husband, John Holmes ("Holmes"), entered into a Fair Housing Act ("FHA") mortgage loan in the amount of $257,533.00 in favor of the original lender, KH Financial, L.P., for the purchase of the subject property as their primary residence. This FHA loan included a fixed interest rate of 7.0%. *See* Group Exhibit A attached hereto is a copy of the mortgage and note. *Id.*

9. On September 22, 2009, McClain and Holmes divorced. As part of the divorce decree, Holmes quit-claimed his interest in the subject property to McClain. McClain retained title to and possession of the subject property and continued to maintain the property as her primary residence during and after the divorce.

10. Due to a financial setback in 2011, McClain defaulted on the subject loan.

11. As a result of McClain's default, on November 15, 2011, Citi filed a foreclosure action against McClain and other defendants on the subject property in the state court case known as *CitiMortgage v. Maria L. Holmes [McClain], et al.*, 11 CH 5431 (Will County, Illinois).

12. On February 6, 2012, Citi offered McClain a loan modification on her FHA loan under the Federal Making Home Affordable ("HAMP") program.[1] The HAMP modification included a trial period plan and was intended to resolve the foreclosure case against McClain. The trial loan modification required McClain to make three equal payments in the amount of $1,860.00 – in March 2012, April 2012, and May 2012 – at which point the trial modification would automatically convert into a permanent modifications with the same payment terms. *See* Exhibit B attached hereto is a true copy of the February 6, 2012 loan modification.

13. According to the February 6, 2012 loan modification, even though Holmes had signed the original loan documents, his signature was not required on the loan modification. The loan modification expressly provided:

> **4. Additional Agreements.** I agree to the following:
>
> A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless...(ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan...
>
> *Id.* at ¶ 4.

14. As a result, McClain – and only McClain – signed and returned the February 6, 2012 loan modification to Citi. Holmes did not sign the agreement.

15. McClain also made all three trial payments of $1,860.00 on time and in full in March 2012, April 2012, and May 2012. *See* Exhibit C is a copy of the payment history for the subject loan.

---

[1] The HAMP program requirements are set out in the HAMP Guidelines, corresponding Handbook, and Supplemental Directives. *See* Making Home Affordable Handbook v4.0, *available at* https://www.hmpadmin.com/portal/programs/guidance.jsp (last visited August 5, 2015) (click Archives).

16. Despite the offer to grant McClain a permanent loan modification after three payments were made, Citi refused to honor its part of the bargain after McClain fully performed her end of the bargain.

17. Frustrated with her experience with Citi, McClain contacted the Department of Housing and Urban Development ("HUD") for assistance. HUD agreed to assist McClain.

18. On May 10, 2012, Citi sent McClain a "Stipulated Partial Claim Agreement" claiming she owed 11 payments of ~$2,188.00 totaling $23,887.48, plus $3,389.50 in foreclosure fees, to bring the loan current. *See* Exhibit D attached hereto is a Stipulated Partial Claim agreement.

19. The Partial Claim Agreement also provided for a principal reduction of $28,583.51, which HUD would pay Citi as part of the Agreement. *Id.*

20. McClain signed the Partial Claim Agreement with Citi, as well as a "subordinate note" under which McClain owed HUD $55,860.49 in the form of a second mortgage. *See* Exhibit E is a true copy of the Subordinate Note.

21. Of the $55,860.49 paid to Citi by HUD, $28,583.51 went towards a principal reduction, and the remaining $23,887.48 should have been applied to McClain's loan to bring it current. *See* Exhibits D and E.

22. In the meantime, McClain continued to made her modified payments to Citi in the amount of $1,860.00 each month, which Citi continued to accept.

23. On September 4, 2012, HUD paid Citi $55,860.49 pursuant to the Partial Claim Agreement which should have brought the loan current and reduced McClain's principal balance from $261,040.16 to $232,456.65. *Id.*

24. However, Citi did not bring McClain's loan current pursuant to the Partial Claim Agreement with McClain and HUD, but continued to deem McClain's account in default,

4

continued to assess defaulted related fees to McClain's account, and refused to dismiss the foreclosure. *See* Exhibit C.

25. Despite Citi's breach of the loan modification and the Partial Claim Agreement, McClain remained liable to HUD for the $55,860.49 in the form of a second mortgage and subordinate note on the subject property. *See* Exhibit E.

26. Feeling defeated and seeing no other option to protect her home, McClain continued to pay Citi her modified payment amount of $1,860.00 each month in June 2012, July 2012, August 2012, September 2012, and October 2012. Citi accepted every single payment. *See* Exhibit C.

27. On October 2, 2012, after McClain made and Citi accepted seven loan modification payments and ~$56,000 from HUD, Citi sent McClain "new" loan modification documents with nearly identical terms to the initial February 6, 2012 loan modification. Both the February 6, 2012 and October 2, 2012 loan modifications included a new principal balance of $232,456.65, an interest rate of 4.5%, and a modified payment amount of ~$1,860.00. *See* Exhibit F attached hereto is a true copy of the October 2, 2012 loan modification.

28. Like the February 6, 2012 modification, the October 2, 2012 modification also provided:

> **4. Additional Agreements.** I agree to the following:
>
> A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless...(ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan...
>
> *Id.* at ¶ 4.

29. Believing it was the only way to finalize the permanent modification, McClain signed and returned the October 2, 2012 loan modification to Citi. McClain also made her November 2012 payment to Citi for the eighth consecutive month.

30. Ten days later, on October 12, 2012, Citi sent McClain an identical, yet unexecuted, version of the October, 2 2012 loan modification that she had already signed. McClain again signed and returned the "new" loan modification to Citi. *See* Exhibit G attached hereto is a true copy of the October 12, 2012 loan modification.

31. On November 1, 2012, Citi sent McClain another unexecuted version of the exact same loan modification that she had already signed – now twice – in October 2012. McClain again signed and returned the loan modification to Citi. *See* Exhibit H attached hereto is a true copy of the November 1, 2012 loan modification.

32. McClain continued to make her modified payment to Citi each month and never missed a loan modification payment.

33. By November 1, 2012, McClain had made eight loan modification payments to Citi and signed each copy of the same loan modification that Citi continued to send. *See* Exhibit C.

34. On November 5, 2012, after McClain signed four separate loan modifications, Citi's attorneys sent McClain a letter that stated her "previously submitted documents [were] missing a signature and notary. Please note that Per [*sic*] FHA guidelines if borrowers are divorced they must provide Power of Attorney that states he/she has the authority to sign on his/her behalf in regards to the mortgage." *See* Exhibit I attached hereto is a true copy of the November 5, 2012 letter.

35. In response, on November 14, 2012, McClain sent a RESPA "Qualified Written Request ("QWR")" to Citi's attorneys advising that her ex-husband was not required to sign the document or be involved in the loan modification based on the express terms of the loan modification. *See* Exhibit J is a true copy of McClain's November 14, 2012 QWR.

6

36. On December 7, 2012, McClain's attorney, Victor E. Blackwell, also sent a QWR to Citi's attorneys informing Citi that McClain was legally divorced from Holmes and that Holmes had conveyed his interest to the property to McClain by way of Quit Claim Deed as part of the divorce decree. The second QWR again disputed the necessity of Holmes' signature on the loan modification. *See* Exhibit K is a true copy of McClain's December 7, 2012 QWR.

37. Neither Citi nor its attorneys responded to McClain's first QWR or second QWR.

38. Instead, Citi continued to deny McClain her loan modification, while accepting her payments in the amount set forth in the loan modification agreement. Citi continued to deem McClain in default, send her notices of default, and prosecute the foreclosure.

39. On December 13, 2012, after McClain had signed the exact same loan modification four times, made nine consecutive payments, and had her attorneys advise Citi of the divorce decree, Citi sent McClain a document that stated she was not approved for the loan modification because she "did not return the required modification documents to complete the modification." *See* Exhibit L is a true copy of the December 13, 2012 letter.

40. McClain continued to make payments each month to Citi. By March 2013, McClain made and Citi accepted thirteen consecutive loan modification payments totaling over $24,000.00. Exhibit C.

41. On May 21, 2013, McClain's attorney again advised Citi's attorneys that McClain was divorced, had no contact with her ex-husband, and that her ex-husband had quit-claimed his interest in the subject property as part of the divorce decree. McClain's attorney further advised Citi that the loan modification paperwork on its face did not require the signature of McClain's ex-husband to be valid, and that it was improper to deny McClain the loan modification after she had made thirteen payments. *See* Exhibit M is a true copy of the May 21, 2013 letter.

42. On June 24, 2013, McClain's attorney sent Citi another request for clarification, emphasizing that McClain had unfairly paid Citi a modified amount for over a year without receiving a fair resolution to the loan. *See* Exhibit N is a true copy of the June 24, 2013 correspondence.

43. On December 5, 2013, the foreclosure court entered an order stating, in part, that Citi would provide McClain with the relevant FHA provision requiring that Holmes also sign the loan modification. *See* Exhibit O is a true copy of December 5, 2013 court order.

44. Citi never provided McClain with a copy of any FHA regulation showing that McClain's ex-husband had to sign the loan modification.

45. Citi never honored the loan modification or Partial Claim Agreement, or provided McClain with a valid reason for the denial of her loan modification and thirteen payments.

46. After continuing to both deny the modification and Partial Claim Agreement, Citi proceed with the foreclosure. Citi forced McClain to reinstate her mortgage loan instead of honoring her loan modification. McClain had to pay $33,783.80 out of her retirement account, including an $8,000.00 penalty, to withdraw money from her retirement fund. *See* Exhibit C.

47. On January 8, 2014, a court order was entered in the foreclosure stating that McClain was tendering $33,783.80 to Citi to reinstate the loan. The foreclosure court further ordered that McClain resume payments "in accordance with the prior modification agreement." *See* Exhibit P attached hereto is a true copy of the January 8, 2014 court order.

48. In sum, Citi was paid the full reinstatement amount from not only McClain, but also ~$23,000.00 from HUD, retaining a profit at the detriment of McClain.

49. On February 24, 2014, the foreclosure was dismissed "without prejudice." *See* Exhibit Q is a true copy of the February 24, 2014 order.

50. On October 16, 2014, Citi acknowledged receipt of the quit-claim deed to remove Holmes from the mortgage account for the first time. *See* Exhibit R is a true copy of the October 16, 2014 letter.

51. On April 8, 2015, Citi sent McClain a statement that she owed an outstanding principal balance of $205,525.50, had a fixed interest rate of 4.75% on the subject loan, and owed a monthly payment amount $2,008.77. *See* Exhibit S is a true copy of McClain's April 8, 2015 mortgage statement.

52. According to McClain's mortgage statement, Citi did not incorporate the terms of her loan modification. Citi failed to accurately adjust the interest rate to 4.5%, or reduce the monthly payment amount to ~$1,860.00, per the express terms of McClain's binding and court-ordered loan modification. *Id.*

53. To this day, Citi has failed to honor McClain's binding, court-ordered loan modification and good-faith loan modification payments.

54. To this day, Citi has failed to honor the Partial Claim Agreement.

55. All of Citi's actions are the proximate cause of damages to McClain that include illegal fees, charges, interest, emotional distress that disrupted her personal life and job performance, pain and suffering, damage to reputation, the loss of funds that Citi cashed and misapplied to McClain's account, the loss of the money that HUD paid Citi on McClain's behalf, the loss of money that McClain paid to reinstate the loan, and fines that McClain had to pay to deduct funds from her retirement to reinstate the loan for the amount that Citi wrongfully insisted that McClain pay, and attorney's fees to defend a foreclosure.

56. McClain restates each and every allegation stated herein, including the allegation of damages in paragraph 55, as if fully alleged in each count of this complaint.

## COUNT I – BREACH OF CONTRACT

57. McClain restates and reallages paragraphs 1 through 56 as though fully set forth herein.

58. McClain had a valid and enforceable loan modification and Partial Claim Agreement with Citi.

59. McClain fully performed her duties under each contract by tendering her monthly payments, by complying with all other terms of the loan modification, and signing a subordinate note with HUD.

60. Citi misapplied McClain's payments, placed McClain's payments into a suspense account, and failed to properly allocate her payments to principal, interest, and escrow in violation of the contract.

61. McClain requested that Citi properly apply her payments to her account for the binding Partial Claim Agreement and loan modification, but her oral and written requests were refused.

62. After entering into a binding Partial Claim Agreement and loan modification, Citi assessed penalties, increased McClain's monthly payment amount, increased her principal balance, recorded her loan as past due, refused to provide a permanent loan modification and continued to prosecute a wrongful foreclosure.

63. Citi is in further material breach of the loan modification contract for its:

   a. failure to credit and apply McClain's payments as required by the loan modification;
   b. assessment of unauthorized late fees, legal fees, and costs;
   c. conversion of escrow funds to unauthorized fees and costs;
   d. failure to apply payments to interest and principal before escrow and fees;
   e. failure to provide accurate repayment and "reinstatement" figures;
   f. failure to accurately respond to McClain's correspondence and other disputes;
   g. failure to conduct its affairs in good faith;

10

      h.   continuing to prosecute a foreclosure with a request for personal deficiency after Citi was made whole pursuant to the loan modification and Partial Claim Agreement; and

      i.   forcing McClain to reinstate the loan to save her home after she entered into a binding loan modification.

64. As pled in paragraph 55, McClain was damaged as a result.

WHEREFORE, Plaintiff Maria McClain requests that this Honorable Court:

    a.   find that CitiMortgage, Inc. materially breached the mortgage contract;

    b.   award McClain her actual damages to be proven at trial;

    c.   award McClain her reasonable attorney fees and costs; and

    d.   award McClain her other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATION OF ILLINOIS CONSUMER FRAUD ACT

65. McClain restates and realleges paragraphs 1 through 64 as though fully set forth herein.

66. McClain meets the ICFA definition of "consumer" and "person." *See* 810 ILCS 505/1.

67. Citi violated 815 ILCS 505/2 by engaging in unfair and deceptive acts, and by using fraud, deception, and misrepresentation in its attempts to collect a debt.

### Making Home Affordable Program (HAMP)

68. The subject loan is eligible under HAMP.

69. Citi participates in HAMP.

70. As a participant in HAMP, Citi is required to comply with HAMP guidelines.

71. Under the HAMP program, which governs FHA loans, Citi could not require McClain's ex-husband to sign the loan modification or any other modification documents when he had no interest in the subject property.

72. Once McClain provided legal documentation of her divorce, Citi could not deny McClain the benefit of the HAMP program, her loan modification payments, or her eligibility for a loan modification on the basis that Holmes did not sign the loan modification document.

11


73. Citi violated HAMP guidelines and directives by denying McClain a permanent loan modification after McClain successfully completed her loan modification and made 13 loan modification payments, Citi further violated HAMP when it pursued foreclosure and added interest and fees in an effort to substantiate its wrongful denial of the permanent loan modification.

74. Citi violated HAMP by: (1) failing to offer McClain a HAMP loan modification even though she is eligible and qualified for relief under the HAMP guidelines; (2) unduly delaying and failing to provide notification of her loan modification status; (3) routinely demanding documents she had previously submitted; (4) repeatedly requiring Holmes to sign the same documentation; (5) failing to provide her with timely, accurate and consistent information about the status of her loan modification; and (6) failing to offer her a permanent loan modification for the same payment amount as her loan modification or superseding loss mitigation alternative.

75. As a participant in HAMP, Citi received compensation from Fannie Mae each time that McClain completed a loan modification. McClain completed the "trial" loan modification four times; each time Citi was compensated by Fannie Mae.

76. Citi took the compensation from Fannie Mae under HAMP, without providing McClain with a permanent modification based on the same terms, in violation of HAMP guidelines.

    a. **Unfairness**

77. At all times prior to denial of McClain's loan modification, Citi treated McClain as the sole borrower on the subject loan.

78. Citi unfairly terminated McClain's loan modification, failed to honor her loan modification payments, and failed to offer her a permanent loan modification in accordance with HAMP when it falsely claimed that Holmes' signature was required on the documents.

79. Citi unfairly continued to send McClain loan modification offers at the same time it wrongfully deemed McClain ineligible due to the lack of Holmes' signature on the documents.

80. McClain relied on Citi's actions. Had McClain known that the modification and her payments would not be honored, McClain would have pursued other possibilities and not spent over $24,000.00 on loan modification payments and signed a new and additional $56,000.00 note with HUD.

81. McClain's inquiries and disputes regarding the servicing of her loan were never investigated nor adequately answered; the lack of clarity from Citi resulted in an unsophisticated consumer entering into a perpetual state of confusion regarding the true status of the mortgage loan. This never-ending battle lasted over two years.

82. Citi's conduct in relation to McClain's loan was willful, malicious, unfair, arbitrary, and designed to place McClain's account in a perpetual state of "default."

83. Citi's failure to abide by HAMP guidelines and directives for the evaluation, formation, and servicing of McClain's HAMP loan modification was unfair.

84. It was unfair for Citi to deny McClain the benefit of her permanent HAMP loan modification after she made all loan modification payments on time and in full in accordance with HAMP and submitted all loan modification paperwork as required under HAMP.

85. It was unfair for Citi to induce payments from McClain directly, and also through HUD, without the intention of ever honoring the loan modification of the Partial Claim Agreement.

    **b. Deception**

86. Citi made material misrepresentations of fact regarding the status of the subject loan, the payment history, whether McClain could save her home through a loan modification and the Partial Claim Agreement, and the amounts actually owed.

87. Citi employed communications with McClain that were confusing and specifically designed to deceive McClain so she could not decipher the true statements from the false statements.

88. It was deceptive for Citi to induce McClain – both orally and in writing – to make payments on the loan modification and the Partial Claim Agreement even though Citi never intended to implement nor actually implement the loan modification internally. Citi then took McClain's money and applied it internally to a superseded account and associated fees.

89. It was deceptive for Citi to inundate McClain with conflicting and false information about the acceptance and receipt of the signed loan modification, to send conflicting and false correspondence with respect to the loan account, and to make contradictory communications in response to nearly all of the communications from McClain and her attorneys.

90. Citi's communications and conduct were purposely confusing, misleading, and designed to trick McClain into believing that a loan modification existed and induce McClain to make ongoing payments – while profiting from McClain's payments – and then attempt to profit further from a foreclosure sale of McClain's home and the collection of a personal deficiency.

91. McClain relied on Citi's representations that her loan modification payments would be applied to modify her loan by making thirteen loan modification payments to later discovered that Citi never honored the loan modification contract.

92. Citi intended McClain to rely on its deceptive and unfair acts and its misrepresentations, and McClain did in fact rely on Citi's deceptive and unfair acts to her detriment

93. McClain relied on Citi's actions by making over $24,000.00 in loan modification payments and signing a ~$56,000.00 note with HUD, only to be tricked into believing she was still in "default" and needed to pay additional and unexplained fees and charges. Additionally,

14

McClain relied on Citis actions by believing that she had "lost" her loan modification and then withdrawing money from her retirement account to pay Citi amounts that were not owed under threats of default and foreclosure.

94. Moreover, it was unfair for Citi to accept the payments from HUD and then seek payment from McClain as if HUD did not pay Citi.

95. Citi's overall scheme was designed to thwart McClain's attempts to enforce its loan modification and designed to discourage McClain from continuing to fight for her home, while tricking McClain into making all monthly payments and signing a ~$56,000.00 note.

96. McClain could not avoid these immoral undertakings because the Citi would not accurately communicate with her.

97. When taken as a whole over several years, the Citi's conduct was so unethical and unending that McClain had no choice but to submit. McClain had no actual control over (a) how its payments were being applied, (b) the filing and prosecution of the foreclosure and the threat of a personal deficiency judgment, (c) how Citi truly treated her account internally, or (d) whether what the Citi represented was truthful.

98. The misrepresentations, deception, and unfair practices complained of occurred in the course of conduct involving trade or commerce.

99. Citi's conduct offends public policy as it demonstrates an industry-wide practice of charging unearned fees and costs to a borrower in order to make a profit, forcing borrowers to make loan modification payments without properly crediting the payments or honoring its obligations under HAMP, and by profiting off of McClain's payments and the monetary commission from HUD through the Partial Claim Agreement – with the sole intention of

ultimately filing foreclosure, selling the real estate, and obtaining a personal deficiency judgment against a borrower.

100. Citi's actions caused substantial injury to McClain and to consumers generally, as McClain and consumers reasonably expect their HAMP loan modifications to be honored, their loans and accounts to be properly managed, and their payments properly applied.

101. Punitive damages are warranted because Citi's conduct was outrageous, willful, wanton, showed reckless disregard for the rights of McClain and consumers in general, and carried on for several years.

WHEREFORE, Plaintiff MARIA MCCLAIN requests that this Honorable Court:

a. enter judgment in its favor and against CitiMortgage, Inc.;
b. declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;
c. award McClain statutory, actual, and punitive damages, in an amount to be determined at trial, for the underlying ICFA violations;
d. award McClain costs and reasonable attorney fees under 815 ILCS 505/10a(c); and
e. award any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

102. McClain repeats and realleges paragraphs 1 through 101 as though fully set forth herein.

103. The subject loan is a "federally related mortgage" under RESPA. *See* Exhibit A.

104. Citi qualifies as a "servicer" under RESPA § 2605(i)(2).

### a. Violation of RESPA § 2605(e)(1)

105. Citi violated RESPA § 2605(e)(1)(A) by failing to timely acknowledge receipt of McClain's QWRs within 5 days.

### b. Violation of RESPA § 2605(e)(2)

106. Citi failed to timely respond to or conduct a reasonable investigation in response to McClain's QWR and requests for information in violation of RESPA § 2605(e)(2).

107. Citi violated RESPA § 2605(e)(2) by failing to respond to McClain's QWRs.

108. Citi violated RESPA § 2605(e)(2) by failing to respond to McClain's QWRs by (a) making appropriate corrections to McClain's account, (b) conducting an investigation and providing statement of reasons why the servicing was correct, or (c) providing a reason why the requested information is unavailable.

109. McClain suffered additional damages from Citi's violation of RESPA, including those alleged in paragraph 55 above.

WHEREFORE, Plaintiff MARIA MCCLAIN requests that this Honorable Court:

a. grant judgment in her favor and against CitiMortgage, Inc.;
b. declare CitiMortgage's perpetual conduct to be a violation of RESPA;
c. award McClain actual and additional damages pursuant to RESPA § 2605;
d. award McClain attorney fees and costs pursuant to RESPA § 2605(f); and
e. award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Respectfully Submitted,

By: ___/s/Mara A. Baltabols____
    **Mara A. Baltabols**
    Attorney for Plaintiff

Sulaiman Law Group, Ltd.
Mara A. Baltabols
ARDC # 6299033
900 Jorie Blvd., Suite 150
Oak Brook, IL 60523